MDR/2179
THOMAS L. SANSONETTI
Assistant Attorney General
MICHAEL D. ROWE
DAVID M. THOMPSON
SCOTT J. JORDAN
ERIC G. HOSTETLER
MICHELE L. WALTER
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
950 Pennsylvania Avenue
P.O. Box 23986
Washington D.C. 20026-3986
(202) 514-3144 (Rowe)

CHRISTOPHER J. CHRISTIE
United States Attorney
SUSAN C. CASSELL
ANTHONY J. LaBRUNA
Assistant United States Attorney
970 Broad Street
Newark, New Jersey 07102
(973) 645-2926

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| E. I. DU PONT DE NEMOURS & Co., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No.  CIV 97-497 |
| v. ) | |
| ) | Hedges, J./Martini, J. |
| UNITED STATES OF AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |

**CONSOLIDATED MEMORANDUM SUPPORTING MOTION
FOR JUDGMENT ON THE PLEADINGS AND
<u>OPPOSING ENTRY OF PARTIAL FINAL JUDGMENT OR CERTIFICATION</u>**

On December 30, 2003, the Court granted the Government's motion for partial summary judgment on what the parties have referred to as the "Louisville Portion" of this litigation, amending the accompanying Order on January 8, 2004 to avoid any implication that the relief granted exceeded what the United States had sought.  DuPont now seeks either the entry of a partial final judgment or an interlocutory appeal, for the stated reason that the Third Circuit may decide the matter before the Supreme Court reaches the issue in *Aviall Services Inc. v. Cooper Industries Inc.*, 312 F.3d 677 (5th Cir. 2002) *cert. granted*, 2004 WL 42543 (U.S. Jan. 9, 2004) ("*Aviall II*").[1]  Yet both the parties' resources and judicial economy would be better served by setting an alternative course.

The Court should deny DuPont's motion, and instead grant the attached motion for judgment on the pleadings as to all remaining plants: *first*, because the allegations of the complaint with regard to the remaining 14 plants no longer state a claim for relief pursuant to CERCLA section 113(f); and *second*, because there is therefore no reason to separate Louisville from the remainder of the litigation simply to facilitate an immediate appeal.

I.     **THE UNITED STATES IS ENTITLED TO JUDGMENT ON THE PLEADINGS**

Fed. R. Civ. P. 12(c) provides, in pertinent part, that a motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed but within such time as not to delay the trial."[2]  The motion is functionally similar to one brought pursuant to Rule 12(b), and is

---

[1]     *See Brief In Support Of Plaintiffs' Motion For Entry Of Judgment Under F.R.C.P. 54(b) Or, In the Alternative, For Certification Under 28 U.S.C. § 1292(b)* at 10 n.1 (January 15, 2004) ("*DuPont Br.*").

[2]     The first criterion set forth in the rule, regarding the need to avoid delay, is plainly satisfied in these circumstances.  The only portion of the case that was ready for trial was disposed of in the Court's recent Amended Order.

governed by the same standards, including the option to convert the motion to one for summary judgment as required. *Citisteel USA, Inc. v. General Electric Co.,* 78 Fed. Appx. 832, 835 n.3, 2003 WL 22455408 *2 n.3 (3d Cir. 2003); *Shelly v. Johns Manville Corp.*, 798 F.2d 93, 97 n.4 (3d Cir. 1986). The Court must "view the facts in the pleading in the light most favorable to plaintiff and must grant the motion only if the moving party establishes that no material issues of fact remain and that it is entitled to judgement as a matter of law." *Shelly*, 798 F.2d at 97 n.4.

In this instance, the Court has already held that DuPont's claims regarding the Louisville Plant "must fail as a matter of law,"[3] and has specifically taken note that "this litigation could have been equally well disposed of on a motion to dismiss . . . ." *Opinion* at *1 n.3. The reasoning that supports the decision follows Third Circuit precedent and relies upon: 1) the fundamental nature of a contribution claim (*Opinion* at * 9); 2) the requirement that DuPont extinguish some underlying claim upon which it seeks contribution (*Opinion* at * 10); and 3) the Court's conclusion that "a primary action brought under any other federal statute, including a RCRA permit program, absent express statutory authority, is insufficient to permit the derivative CERCLA contribution action" (*Opinion* at * 11). Because DuPont's complaint is no longer sufficient to meet the requirement that it include "a short and plain statement . . . showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)(2)), and because the Company appears to concede that the remainder of the case is controlled by the December 30 Memorandum Opinion,[4]

---

[3]     *E.I. Du Pont De Nemours & Co. v United States*, No. Civ. 97-497, 2003 WL 23104700 *8 (D.N.J. December 30, 2003) ("*Opinion*") (no cause of action available pursuant to section 113(f)(1)'s "savings clause"); *see Id.* ("To put it in the simplest terms, this case is an action for recoupment or reimbursement, and as such it is precluded by the law of this circuit.")

[4]     *DuPont Br*. at 10 ("The question decided by the Court with respect to the Louisville Plant is a novel issue of law in the courts of this Circuit and, yet, *common to all of the*

the most direct course to the appeal the Company seeks is to grant the Government's motion for judgement on the pleadings.

Given the "historic federal policy against piecemeal appeals,"[5] the Court is obliged to examine the impact of the December 30 decision on the remainder of the case in connection with DuPont's pending motion before it may either grant Rule 54(b) relief or certify the case for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[6]  Yet even a cursory examination of the Company's complaint demonstrates that the allegations regarding the remaining plants do not measure up to the criteria the Court established.  DuPont advances a series of allegations concerning the history of production at each plant (Complaint ¶¶ 26-63), recites that the United States "exercised actual and substantial control" over these plants as part of various wartime arrangements (Complaint ¶¶ 23, 64), and then simply asserts that the "plaintiffs are entitled to contribution from the defendants . . ." with regard to each plant "[p]ursuant to Section 113(f) of

---

*contribution claims in this litigation . . .*" (emphasis supplied)); *see id*. at 13 ("This Court's Opinion resolves the threshold question regarding when and under what circumstances a right of contribution exists under CERCLA and, thus, *controls all remaining contribution claims in this litigation*." (emphasis supplied)); *id*. at 16 ("the Third Circuit's guidance on when and under what circumstances a right to contribution exists under CERCLA will have general applicability *to all of the remaining claims in the case*" (emphasis supplied)).

     [5]     *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980) ("*Curtiss-Wright*").

     [6]     Fed. R. Civ. P. 54(b) ("only upon an express determination that there is no just reason for delay . . ."); *Curtiss-Wright*, 446 U.S. at 7-8 (describing the analysis required for Rule 54(b)); *Carter v. City of Philadelphia*, 181 F.3d 339, 343-46 (3d Cir. 1999) ("*Carter*") (requiring a statement of reasons accompanying a Rule 54(b) determination, but holding the requirement non-jurisdictional); 28 U.S.C. § 1292(b) (certification requires: a "controlling question of law," "substantial ground for difference of opinion," and a determination that an "immediate appeal . . . may materially advance the ultimate termination of the litigation . . ."); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) ("*Katz*") ("the district judge must certify that the order satisfies the three criteria . . .").

CERCLA" (Complaint ¶ 75). There is no allegation – factual or legal – that any Plaintiff has faced a civil action brought pursuant to CERCLA sections 106 or 107 that would give rise to a contribution claim under section 113(f)(1), or has entered into a settlement that would qualify for purposes of commencing an action pursuant to section 113(f)(3)(B). The remainder of the action is therefore subject to immediate dismissal.[7] Accordingly, absent amendment, the Court should dismiss the remainder of Count II and direct the clerk to enter judgment pursuant to Fed. R. Civ. P. 58(a)(2)(A)(iii).

II. **RULE 54(b) RELIEF IS NOT WARRANTED**

The United States agrees that the Court's December 30 decision controls that portion of the case that would have otherwise gone to trial in November, and that it constitutes an "ultimate disposition" of any and all claims regarding DuPont's Louisville plant for purposes of Rule 54(b). *See Carter*, 181 F.3d at 346.

For reasons similar to those just stated, however, the Company has not made the case that "there is no just reason for delay." There is certainly no prejudice to the Plaintiffs from waiting to resolve the remaining issues – for if DuPont's position ultimately prevails, trials covering the remaining fourteen plants will be required in any event. The Plaintiffs do not stand deprived of the right to collect a judgment while unrelated matters are tried, *compare Curtiss-Wright*, 446 U.S. at 6, and can demonstrate no genuine harm beyond that suffered by any litigant suffering an adverse decision in district court.

---

[7] The United States respectfully disputes DuPont's suggestion that "the parties will be forced to undergo duplicative motions for all of the Plaintiffs' contribution claims at the other fourteen sites, including fact-finding regarding the enforcement or litigation status of each of those sites." *DuPont Br.* at 11-12. Under the legal standards set forth in the December 30 Opinion, the complaint is facially deficient.

Further, although a decision by the Third Circuit on the issues presented in the Louisville "test case" would certainly be precedential, a proper evaluation of the "risk of duplicative appeals" cannot be undertaken until DuPont tells the Court whether (and to what extent) it believes the decision controls the remaining fourteen sites.[8]  If, as the Company appears to concede, the decision controls the reminder of the case, a final judgment is in order, and a partial judgment is not required.  If not, then the propriety of a Rule 54(b) determination depends heavily on the allegations DuPont presents with regard to those portions of the case that remain.  But the Company cannot make the case without at least attempting to explain the impact of the Court's decision on the remaining plants.

III.     **CERTIFICATION FOR INTERLOCUTORY APPEAL IS NOT WARRANTED**

DuPont has also failed to demonstrate that relief pursuant to 28 U.S.C. § 1292(b) is proper.  The United States concedes that the court's December 30 decision involves a controlling question of law – at least with regard to the Louisville site -- and further does not contest that there is substantial ground for a difference of opinion.  The question, once again, is about whether an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Katz*, 496 F.2d at 754.  Should DuPont contend that the basis for the environmental work undertaken at the remaining plants is such that the related claims survive or avoid the Court's December 30 order, the precedential impact of the decision is less important to the remainder of the case, and an immediate appeal might well be unwarranted.  Should the

---

[8]     *See Curtiss-Wright*, 446 U.S. at 6 (factors to be considered include the risk of duplicative appeals – "whether the nature of the claims already determined [is] such that no appellate court would have to decide the same issues more than once . . ."); *compare Carter*, 181 F.3d at 346 (no risk because Eleventh Amendment defense not at issue with regard to the remaining defendants).

company concede that the decision controls the remaining plants, there is no need for an *interlocutory* appeal. The Court should simply enter judgment, a course that would allow an appeal by the usual means.

IV. **THE AVIALL PROCEEDINGS ARE SIGNIFICANT**

In the final analysis, the questions presented by the pending cross-motions are substantially about judicial efficiency – how best to advance the ultimate resolution of the questions resolved in the Court's Opinion given: 1) the impact of that opinion on the remainder of the case; and 2) the likely impact of further proceedings in the *Aviall II* litigation.[9] Because the Supreme Court has now granted certiorari in *Aviall II*, because the Department believes that the Court will likely decide the case prior to the summer recess,[10] and because the Court's decision will almost certainly control further proceedings regarding both the Louisville site and any similarly situated sites in this litigation (*cf. Opinion* at *13 n.16), there is a real possibility that the quickest route to a final resolution of the issue is a short stay pending further developments concerning the prospects for a speedy resolution in the Supreme Court.[11]

---

[9] Certainly, the United States seeks action on its cross motion for judgment on the pleadings even should the Court grant DuPont some form of interlocutory appeal. But under the circumstances, we think the motions closely related, and the first question to be one of judicial economy.

[10] The Department's expectation in this regard is based upon the timely grant of the writ and the customary practice of the Court in similar circumstances. Although we are preparing the required briefing concurrently with this memorandum, we cannot be certain that the Court will hear argument and render a decision before the summer recess (typically beginning in early July). Given the number of important cases commonly before the Court, there is at least a possibility that oral argument will not occur in April, or that the decision will not be handed down until sometime following the Court's return in the Fall of 2004.

[11] Should the *Aviall* Plaintiff prevail in the absence of the partial final judgment DuPont seeks, Rule 54(b) provides that an "order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims . . . ." Many litigants in

DuPont's contrary suggestion that the case should be hurried along at every turn so that the Third Circuit can assist the Supreme Court with its task is unsupported and inadvisable. The cases the Company has cited do no support the proposition that the grant of the writ argues for the *wholesale acceleration* of pending proceedings.[12] Indeed, there is are sound reasons for not rushing to decision before the Supreme Court can act. First, the prompt granting of the writ absent decisions by multiple circuits suggests that the Court does not require additional assistance. Second, the decision-making process on what are admittedly substantial questions of statutory interpretation would have to be hurried at every turn in order to produce even a reasonable chance that the Court of Appeals would hand down an opinion prior to final resolution of the issue by the Supreme Court – a procedure that is unlikely to promote the kind of careful consideration DuPont says is warranted. Accordingly, absent the entry of final judgment, the Court may wish to await further developments in *Aviall II*.

---

DuPont's position would look upon the possibility of immediate action by the Supreme Court as a blessing, as a final resolution of the question that now hinders the Company is near, and the cost of obtaining that resolution substantially less than in the more ordinary circumstance.

[12] *Gherebi v. Bush*, 352 F.3d 1278 (9th Cir. 2003), an "enemy combatant" case, admittedly provides some support for the idea that a decision should not be affirmatively *withheld* merely because the Supreme Court has taken up the same issue. *Gherebi*, 352 F.3d at 1304, *but see Id.* 352 F.3d at 1305 (dissenting opinion suggesting that waiting would avoid rendering an inevitably "advisory" opinion). Yet a decision has been rendered by the Court presently in control of this case, and the Company's remaining citations (also relied upon by the majority in *Gherebi*) appear to add nothing to the argument. *United States v. Mendoza*, 464 U.S. 154 (1984) considers the wholesale impact that the application of nonmutual, offensive collateral estoppel (issue preclusion) against the United States would have on both the behavior of the Solicitor General's office and the court's practice of not always taking the first petition for certiorari. *See Id.* at 160. *United States v. Sperry Corp.*, 493 U.S. 52 (1989) simply remands an issue not decided by the court of appeals and notes that the basic justiciablity of the question was at issue in another pending case. *See Id.* at 66.

## CONCLUSION

For all these reasons, the Court should deny DuPont's motion for a partial final judgment or certification, and should instead grant the attached motion for judgment on the pleadings. A proposed order is attached.

                Respectfully submitted,

                THOMAS L. SANSONETTI
                Assistant Attorney General


                *s/ Anthony J. LaBruna, for s/ Michael D. Rowe*
                MICHAEL D. ROWE
                DAVID M. THOMPSON
                SCOTT J. JORDAN
                ERIC G. HOSTETLER
                MICHELE L. WALTER
                U.S. Department of Justice
                Environment & Natural Resources Division
                Environmental Defense Section

                CHRISTOPHER J. CHRISTIE
                United States Attorney
                SUSAN C. CASSELL
                ANTHONY J. LaBRUNA
                Assistant United States Attorneys